IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SHELTON DENORIA JONES,           §
                                 §
            Petitioner,          §
                                 §
v.                               §
                                 §    CIVIL ACTION NO. H-09-1825
RICK THALER, Director,           §
Texas Department of Criminal     §
Justice-Correctional             §
Institutions Division,           §
                                 §
            Respondent.          §

## MEMORANDUM OPINION AND ORDER

Petitioner Shelton Denoria Jones has filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court conviction and death sentence for capital murder. Respondent Rick Thaler has filed a motion for summary judgment, and Jones has filed a cross-motion for partial summary judgment. Having carefully considered the petition, the summary judgment motion, the cross-motion, the state court record, the parties' submissions, and the applicable law, the court will grant in part and deny in part Jones' amended petition, grant in part and deny in part respondent's motion for summary judgment, and grant Jones' cross-motion for partial summary judgment, entering final judgment by separate order. The reasons for these rulings are set out in detail below.

# I.  Background[1]

At approximately 1:00 a.m. on April 7, 1991, Houston Police Sergeant Bruno D. Soboleski and a civilian rider approached the intersection of Hull and Calhoun streets in Houston in a marked police car.  Soboleski stopped Jones and another person.  Both approached the police car.  Jones placed both hands on the hood of the police car next to the inspection sticker on the driver's side of the car.  His companion stood near the left headlight.  Soboleski exited the police car and proceeded to pat down Jones' companion. Meanwhile, the civilian rider moved from the passenger side to the driver side of the car so she could warn Soboleski with the horn, if necessary.

After patting down Jones' companion, Soboleski approached Jones.  Jones drew a semiautomatic pistol and shot Soboleski three times.  The rider testified there were two shots, a pause, and a third shot.  As Jones drew his pistol, the rider attempted to warn Soboleski by honking the horn.  As Jones fled, the rider heard several more shots.  Police discovered bullet holes in the wind-shield and in the door of the police car indicating that Jones fired several shots at the rider.  Before being transported to the

---

[1]This statement of facts is adapted from the Texas Court of Criminal Appeals ("TCCA") opinion affirming Jones' conviction and sentence.  See Jones v. State, No. 71,369 (Tex. Crim. App. May 4, 1994).  Where this opinion diverges from, or expands upon, the TCCA's discussion of the facts, the difference will be noted by a specific citation to the record.

hospital, Soboleski stated that he did not understand why he was shot after he had fallen to the ground. He later died as a result of the gunshot wounds. Based on this evidence, the jury found Jones guilty of capital murder for murdering a police officer while he was lawfully discharging his official duties. SH at 675, 719.

During the penalty phase the State introduced evidence that Jones pled guilty to two counts of theft on November 4, 1986, and was sentenced to five years' probation. He violated the terms of his probation by attempting to purchase a firearm in November of 1990, and by purchasing two semi-automatic pistols on April 5, 1991. When purchasing the pistols, Jones falsely stated that he had not been convicted of a felony. Finally, one week prior to the underlying crime, Jones robbed a couple at gunpoint, threatening to kill the husband if he did not relinquish his wallet.

Jones produced numerous character witnesses during trial who testified that he was peaceable, hard-working, a good high-school student, and non-violent while incarcerated and awaiting trial. He also called a psychologist who testified that Jones' personality could be termed as an "empty vessel" personality. In other words, Jones' moral beliefs were shaped by the strongest influence available to him at that time, and a month prior to the crime an individual would have been unable to predict Jones' later behavior. The psychologist testified that because of this condition, it was impossible to predict Jones' future behavior but that individuals

-3-

with an "empty vessel" personality often become model prisoners. The psychologist acknowledged, however, that if Jones was recruited by a prison gang to kill a guard, he would not have any problem participating.   The jury found that there was a probability that Jones would commit future acts of criminal violence constituting a continuing threat to society, and that he acted deliberately in killing Soboleski. RA at 239-41.[2]   Accordingly, the trial court sentenced him to death.  SH at 719.

The TCCA affirmed his conviction and sentence, Jones v. State, No. 71,369 (Tex. Crim. App. May 4, 1994), cert. denied, 514 U.S. 1067 (1995).  On October 26, 2005, the TCCA denied Jones' initial application for habeas corpus and treated a document styled "Errata and Corrections to Amended Application for Post-Conviction Writ of Habeas Corpus" as a successive application, dismissing it as an abuse of the writ.  Ex parte Jones, Nos. 62,589-01, and -02 (Tex. Crim. App. Oct. 26, 2005).  On January 27, 2006, Jones filed his third state habeas application raising a single claim of error under Penry v. Lynaugh, 492 U.S. 302 (1989) ("Penry I").  The TCCA remanded the application to the state trial court.  The trial court entered findings of fact and conclusions of law and recommended denying the claim on December 18, 2007.  The TCCA denied the application on June 10, 2009.  Ex parte Jones, No. AP-75,896 (June 10, 2009).

_____

[2]"RA" refers to the record on Jones' direct appeal.

On April 12, 2006, while his third application was pending, Jones filed his initial federal petition for a writ of habeas corpus, which included a <u>Penry</u> claim.  He then moved for a stay and abeyance of his petition so that he could exhaust the <u>Penry</u> claim in state court.  This court stayed the case on April 20, 2006.  On November 28, 2007, this court dismissed Jones' petition without prejudice, and stated that the statute of limitations would be equitably tolled as long as Jones returned to federal court within 30 days of the conclusion of state review.

Jones refiled his federal petition on June 11, 2009, the day after the TCCA denied relief on his <u>Penry</u> claim.  He filed an Amended Petition on July 9, 2009.  Respondent moved for summary judgment on October 5, 2009.

On February 5, 2010, this court again stayed the case to allow Jones to return to state court to raise a claim that the State suppressed material evidence, <u>see</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and denied the Respondent's motion for summary judgment without prejudice.  On March 2, 2010, Jones filed his fourth state habeas application, raising his <u>Brady</u> claim and three others.  On June 30, 2010, the TCCA dismissed Jones' fourth application as an abuse of the writ.  <u>Ex parte Jones</u>, No. 62,589-04 (Tex. Crim. App. June 30, 2010).

On July 6, 2010, Respondent moved to lift the stay.  The court lifted the stay on July 7, 2010.  Respondent moved for summary judgment on August 31, 2010.

-5-

## II.   The Applicable Legal Standards

### A.   The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 335-36 (1997).  Under the AEDPA federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Kitchens v. Johnson, 190 F.3d 698, 700 (5th Cir. 1999).  For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." See Martin v. Cain, 246 F.3d 471, 475 (5th Cir.), cert. denied, 534 U.S. 885 (2001).  Under the "contrary to" clause, this court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'"  Dowthitt v. Johnson, 230 F.3d 733, 740-

-6-

41 (5th Cir. 2000), <u>cert. denied</u>, 532 U.S. 915 (2001) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Williams</u>, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." <u>Hoover v. Johnson</u>, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." <u>Neal v. Puckett</u>, 239 F.3d 683, 696 (5th Cir. 2001), <u>aff'd</u>, 286 F.3d 230 (5th Cir. 2002) (en banc), <u>cert. denied sub nom. Neal v. Epps</u>, 537 U.S. 1104 (2003). The sole inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" <u>Id.</u>

-7-

(quoting <u>Hennon v. Cooper</u>, 109 F.3d 330, 335 (7th Cir. 1997)); <u>see also</u> <u>Gardner v. Johnson</u>, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   <u>See</u> 28 U.S.C. § 2254(d)(2); <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000), <u>cert. denied</u>, 532 U.S. 1039 (2001).   The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Jackson v. Anderson</u>, 112 F.3d 823, 824-25 (5th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1119 (1998).

**B.  The Standard for Summary Judgment in Habeas Corpus Cases**

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." <u>Clark v. Johnson</u>, 202 F.3d 760, 764 (5th Cir.), <u>cert. denied</u>, 531 U.S. 831 (2000).   In ordinary civil cases a district court considering a motion for summary judgment is required to construe the facts in the case in

the light most favorable to the nonmoving party. <u>See</u> <u>Anderson v.</u> <u>Liberty Lobby</u>, 477 U.S. 242, 255 (1986). Where, however, a state prisoner's factual allegations have been resolved against him by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. <u>See</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432 (1983); <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981). In reviewing factual determinations of the Texas state courts, this court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

### III.  <u>Analysis</u>

#### A.  **Penalty Phase Jury Instructions**

During the penalty phase of Jones' trial, the court instructed the jury to determine whether Jones was a future danger to society, and whether he acted deliberately and with the reasonable expectation that Soboleski would die as a result of his actions. Regarding Jones' mitigating evidence, the court instructed the jury:

> You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background,

record, or circumstances of the crime which you believe
could make a death sentence inappropriate in this case.
If you find that there are any mitigating circumstances
in this case, you must decide how much weight they
deserve, and thereafter, give effect and consideration to
them in assessing the defendant's personal culpability,
at the time you answer the special issue. If you
determine, when giving effect to the mitigating evidence,
if any, that a life sentence, rather than a death
sentence, is an appropriate response to the personal
culpability of the defendant, then a negative finding
should be given to one of the special issues.

I-A Tr. at 237. The effect of this instruction is that the jury

should simply answer "no" to one of the two special issues if it

found that any mitigating evidence justified imposition of a life

sentence rather than a death sentence. Jones raises two claims

regarding this instruction.

   1.   *Penry*

   In Lockett *v. Ohio*, 438 U.S. 586, 608 (1978), a plurality of

the Supreme Court held "that the Eighth and Fourteenth Amendments

require that the sentencer . . . not be precluded from considering,

*as a mitigating factor*, any aspect of a defendant's character or

record . . . as a basis for a sentence less than death." 438 U.S.

at 604 (emphasis in original). This holding is based on the

plurality's conclusion that death "is so profoundly different from

all other penalties" as to render "an individualized decision . . .

essential in capital cases." Id. at 605.

   In Penry v. Johnson, 532 U.S. 782 (2001) ("Penry II"), the

Supreme Court clarified that a capital sentencing jury must "be

able to consider and *give effect to* a defendant's mitigating

-10-

evidence in imposing sentence." <u>Id.</u> at 797 (internal quotation marks, citation and brackets omitted).  In Penry's trial, the jury was given a nullification instruction like the one in this case. <u>Id.</u> at 789-90.  The Supreme Court found that there were two plausible interpretations of the instruction:  First, it could be understood as instructing the jurors to weigh the mitigating evidence in determining its answer to each special issue.  <u>Id.</u> at 798.  The Court held, however, that none of the special issues were broad enough for the jury to give mitigating effect to the evidence of Penry's retardation and the abuse he suffered as a child.  <u>Id.</u> For example, the jury could fully credit the mitigating evidence, believe it required a sentence less than death, but find that Penry's retardation actually made him <u>more dangerous</u> in the future, thereby compelling a positive answer to the future dangerousness special issue.  The Court found that a second plausible interpretation was that the jury could simply nullify, i.e., give a negative answer to a special issue that it actually found was supported by the evidence.  <u>Id.</u>  The Court found that this interpretation made the jury instructions "internally contradictory, and placed law-abiding jurors in an impossible situation."  <u>Id.</u>  The Court therefore concluded that the instructions injected an element of capriciousness into the sentencing decision.  <u>Id.</u> at 800.

Jones' sentencing proceeding suffered from the same flaw. Unlike Penry, Jones is not retarded.  He did, however, present expert testimony that he is unusually susceptible to influence by

-11-

others.   Due process requires that the jury have an opportunity to give effect to this mitigating evidence, which "is obviously evidence that might serve as a basis for a sentence less than death." <u>Tennard v. Dretke</u>, 542 U.S. 274, 288 (2004); <u>see also Smith v. Texas</u>, 543 U.S. 37 (2004) (same).   As in Penry's case, Jones' jury could have found that the evidence of Jones' psychological issues made Jones less morally culpable, yet more likely to be dangerous in the future; indeed, the prosecutor elicited testimony that Jones could be recruited by a prison gang to commit violent acts in prison.   As in Penry's case, this evidence would compel an honest juror to answer "yes" to the future dangerousness special issue, while providing no avenue to give the evidence mitigating value.   Similarly, the jury could have found that Jones acted deliberately while still believing him less culpable based on his psychological issues.   These special issues, coupled with the nullification instruction, therefore violated Jones' right to due process because the jury had no opportunity to give effect to Jones' mitigating evidence.

The Texas Court of Criminal Appeals' decision to the contrary was objectively unreasonable.   The supplemental "nullification" instruction was plainly inadequate to avoid the constitutional infirmity condemned by <u>Penry I</u>, as is made abundantly clear by the Supreme Court's subsequent decision in <u>Penry II</u>.   Because Jones' mitigating evidence plainly had mitigating relevance beyond the scope of the future dangerousness special issue, the nullification

-12-

instruction denied Jones his right to have the jury consider and give effect to all of his mitigating evidence. <u>See</u> <u>Brewer v. Quarterman</u>, 550 U.S. 286 (2007); <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233 (2007). This is not an issue about which reasonable jurists could disagree; the nullification instruction approved by the Court of Criminal Appeals did nothing to permit jurors to give effect to mitigating evidence that does not specifically negate one of the statutory special issues. As <u>Penry II</u>, <u>Tennard</u>, <u>Smith</u>, <u>Brewer</u>, and <u>Abdul-Kabir</u> all make clear, this is constitutionally unacceptable. The Court of Criminal Appeals' opinion to the contrary was therefore unreasonable, and Jones is entitled to a new sentencing hearing.

        2.    <u>Arbitrariness</u>

    In his second claim Jones argues that the nullification instruction is unconstitutional because it injected arbitrariness into the sentencing process. Jones' argument relies on the same case law cited above and boils down to a claim that the jury's inability to engage in reasoned moral consideration injects capriciousness into the sentencing process. This is one of the concerns underlying <u>Penry</u>. <u>See</u> <u>Penry II</u>, 532 U.S. at 801 (noting "the arbitrary way in which the supplemental instruction operated, and the fact that the jury was essentially instructed to return a false answer to a special issue in order to avoid a death sentence"). Therefore, Jones' second claim is not actually

-13-

distinct from his first, but is merely a semantic variation on his Penry claim.

## B.   Fair Trial

In his third claim for relief Jones argues that the presence of uniformed police officers among the spectators at his trial created a hostile atmosphere and denied him a fair trial.  Thaler argues that this claim is procedurally defaulted.

To determine whether this claim is defaulted, it is necessary to briefly review the chronology of events.  The TCCA appointed state habeas counsel on January 27, 1997.  Under the Texas habeas corpus statute, Jones' petition was due 180 days later, or July 26, 1997.  July 26, 1997, was a Saturday, making the actual due date the first business day following, or July 28, 1997.  Counsel had federal statute of limitations concerns under the then recently passed AEDPA, and so requested leave to file a skeletal petition on April 24, 1997, and to supplement that petition on or before July 28.  The TCCA granted him leave to file the skeletal petition and ordered that "[a]ny incomplete application shall not be considered by the trial court or this Court until the 180 day period for filing applicant's original application . . . has elapsed."  The TCCA further stated that "[a]ny supplemental application shall be deemed an original, not a successor, application." April 9, 1997, TCCA order, Pet. Exh. 3.  Jones filed his skeletal petition on April 23, 1997, and a document styled

-14-

"Amended Application for Post-Conviction Writ of Habeas Corpus" on July 25.  On July 28 Jones filed a document styled "Errata and Corrections to Amended Application for Post-Conviction Writ of Habeas Corpus." Ex parte Jones, Nos. 62,589-01 and -02 (Tex. Crim. App. Oct. 26, 2005), at p. 208.  This document stated that it was filed to remedy mistakes and errors in his Amended Application, including the complete omission of his fair trial claim which, he claimed, was omitted as a result of a computer error.   On October 24, 1997, Jones filed a Motion to Supplement Application for Post-Conviction Writ of Habeas Corpus Pursuant to Article 11.071 of the Texas Code of Criminal Procedure (Id. at 224.) and a Supplemental Application for Post-Conviction Writ of Habeas Corpus Pursuant to Article 11.071 of the Texas Code of Criminal Procedure. Id. at 229.  In his Motion to Supplement Jones sought to combine his July 25 Amended Application with his July 28 Errata and Corrections.

The trial court eventually entered findings of fact and conclusions of law, which the TCCA adopted in denying the Amended Petition on the merits.  Id. at cover.  The TCCA also issued a per curiam Order on October 26, 2005, denying Jones' Amended Application and dismissing his Supplemental Application as an abuse of the writ.  Jones now argues that his Errata and Corrections cannot have been a successive petition because it was filed within the time set out by statute and the TCCA order.

"When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural

-15-

requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." <u>Sayre v. Anderson</u>, 238 F.3d 631, 634 (5th Cir. 2001). The Supreme Court has noted that

> [i]n all cases in which a state prisoner had defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  "This doctrine ensures that federal courts give proper respect to state procedural rules." <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997) (citing <u>Coleman</u>, 501 U.S. at 750-51), <u>cert. denied</u>, 523 U.S. 1125 (1998); <u>see also</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000) (finding the cause and prejudice standard to be "grounded in concerns of comity and federalism").

Section 5(a) of article 11.071 of the Texas Code of Criminal Procedure states that "[i]f a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application" unless certain exceptions not applicable here apply.  By the plain wording of the statute, a petitioner is entitled to "an" original application, suggesting one filing constituting an original application, with anything filed after the original constituting a successive application.  Notably, the

statute states that an application is successive if filed after the original application is filed, without reference to the date on which either the original or successive application is filed.  The statutory cutoff thus appears to be the filing of the original application, not the due date for the original application.

Under the TCCA's April 9, 1997, order, Jones was permitted to file a skeletal application and a supplemental application which, if timely, would be considered an original.  He did so, and the TCCA rejected his claims on the merits.  He also filed a second document purporting to be errata and corrections.  This second document, however, added an entirely new claim found nowhere in his amended application.[3]  It is clear from the TCCA's order dismissing Jones' applications that the TCCA regarded the skeletal and amended applications as the original application permitted by the statute and order, and the "Errata and Corrections" as a successive petition seeking to add a new claim after the filing of the original application.  While the TCCA decision may be harsh, especially in light of the fact that the last document was filed before the time for filing an original petition expired, the TCCA decision is consistent with a reading of the statute.  This court

---

[3]Jones notes that documents supporting his fair trial claim were appended to the amended application, lending credence to his counsel's contention that the claim was inadvertently omitted from the text of the application.  The body of the amended application, however, contained nothing raising this claim, while the claim was presented in full in the "Errata and Corrections."

is in no position to second guess the TCCA on its application of Texas law. "It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them over such matters." Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005). Because the TCCA relied on an independent and adequate state procedural rule to dismiss the document containing Jones' fair trial claim, the claim is procedurally defaulted and this court may not address it absent a showing of cause and prejudice, or that failure to do so would constitute a fundamental miscarriage of justice.

Jones does not argue that he has cause for his default. A "miscarriage of justice" means actual innocence. Sawyer v. Whitley, 505 U.S. 333, 335 (1992). To show actual innocence

> [T]he prisoner must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

Kuhlmann v. Wilson, 477 U.S. 436, 455 n.17 (1986). More succinctly, the petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995). In light of the evidence of Jones' guilt, including the testimony of an eyewitness who had an opportunity to see Jones at close range, Jones does not meet this standard. Because, however, reasonable jurists could disagree as to whether Jones complied with

-18-

the terms of the April 9, 1997, TCCA order, a certificate of appealability will issue on this claim.

**C.    <u>Brady</u>**

In his fourth claim for relief Jones contends that the State failed to disclose possible impeachment evidence.  Two brothers, Johnny and Walter Green, testified that they saw Jones flee the murder scene.  27 Tr. at 204-72.  Jones alleges that HPD officer Gary Hicks, who responded to the shooting and administered first aid to Soboleski, returned to the crime scene and was assigned to transport the Green brothers to the police station.  Jones asserts, based on an entry in a police dispatch log, that Hicks stopped, with the Green brothers in his car, at the apartment complex where Jones was arrested.  He bases this claim on an affidavit by an attorney claiming that one of the Green brothers told her this, and attaching a document drafted as an affidavit for Green that he allegedly agreed with but refused to sign.  Pet. Exh. 22.  Jones further asserts that the Green brothers saw him for the first time after the shooting when he was being led out of the apartment complex in handcuffs, not at the police station.

Jones next argues that Hicks then picked up Ronald Pickrom, who is a cousin to both Jones and his co-defendant Gregory Pickrom. Jones and Gregory used Ronald's car on the night of the murder. Jones contends that Ronald and the Green brothers rode in Hicks' car together and may have spoken to each other.

-19-

Jones also alleges that Johnny Green may have worked as an informant for the HPD and may have known some of the officers involved in the case, including Soboleski. He cites no evidence in support of this allegation.

### 1.   Procedural Default

Jones presented this claim to the TCCA in his fourth state habeas application, which the TCCA dismissed as an abuse of the writ. Ex parte Jones, No. 62,589-04 (Tex. Crim. App. June 30, 2010). Jones argues, however, that he did not discover the evidence supporting this claim until shortly before filing his amended federal petition. The TCCA issued only a summary dismissal. If Jones' version of events is accurate (meaning that the factual basis of this claim was not available at the time Jones filed his initial state petition because the evidence was suppressed by the State), then this court must assume that the TCCA based its dismissal on a merits determination that Jones failed to show by a preponderance of the evidence that but for a constitutional violation no rational juror could have found him guilty beyond a reasonable doubt. See Tex. Crim. Pro. art. 11.071 §§ 5(a)(1) and (2). Such a decision is interwoven with federal law and does not rest on an independent and adequate state ground. Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).

### 2.   The Merits of the Claim

A prosecutor must disclose evidence favorable to an accused if it "is of sufficient significance to result in the denial of the

defendant's right to a fair trial." <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). The question is not whether the result would have been different, but whether, given the non-disclosures of material evidence, the verdict is less worthy of confidence. In defining the scope of the duty of disclosure, it is no answer that a prosecutor did not have possession of the evidence or that he was unaware of it. Rather, the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995).

The <u>Kyles</u> decision emphasizes four aspects of materiality. First, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)." 514 U.S. at 434. The question is not whether the defendant would have received a different verdict with the disclosed evidence, but "whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Id.</u> A "reasonable probability of a different result" is shown when the suppression "undermines confidence in the outcome of the trial." <u>Id.</u>

Second, the materiality test is not a test of the sufficiency of the evidence. The defendant need not demonstrate that after discounting the inculpatory evidence by the undisclosed evidence that there would not have been enough evidence to sustain the conviction. Rather, a <u>Brady</u> violation is established by showing "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." <u>Id.</u> at 435. Third, harmless error analysis does not apply. <u>Id.</u> Fourth, "materiality to be stressed here is its definition in terms of suppressed evidence considered collectively, not item by item." <u>Id.</u> at 436.

Assuming that Jones is correct in his assertion that this evidence was suppressed, the TCCA's implicit determination that it was immaterial is not unreasonable. The evidence presented at trial included an eyewitness identification of Jones as the shooter by the civilian rider in Soboleski's car, evidence that Jones and Gregory Pickrom left a club together in Pickrom's car before the shooting and that Pickrom's car was found at the crime scene, testimony by police that a box for the type of gun used to shoot Soboleski was seen in plain view in the car, and the gun itself, which was found in Jones' possession and which Jones purchased.[4]

While the allegedly suppressed evidence might have had some impeachment value with regard to the Green brothers, it was not so

___

[4]Jones asserts in a separate claim that the gun and ammunition should have been suppressed. That claim is rejected <u>infra</u>.

-22-

damning as to completely undermine their identification testimony. When coupled with the other very strong evidence of Jones' guilt, the alleged suppression does not undermine confidence in the outcome of Jones' trial. Therefore, the TCCA did not unreasonably apply <u>Brady</u> and its progeny to the facts of this case, nor did it make an unreasonable determination of the facts in light of the evidence presented. The implicit conclusion of the TCCA that Jones failed to demonstrate error of constitutional magnitude is therefore entitled to deference.

**D.   Search and Seizure**

Jones raises three claims related to his arrest inside Brenda Pickrom's apartment and evidence recovered in connection with that arrest. In his fifth claim for relief Jones argues that his trial counsel rendered ineffective assistance by failing to interview witnesses who might have supported his motion to suppress evidence based on his arrest. He notes portions of the statements given by Brenda Pickrom and Veronica Evans supporting his claim that the police entered and searched the apartment before Brenda returned home, and that he and Brenda dated and he had been in her apartment before. In his ninth claim he argues that his appellate counsel was ineffective because he did not challenge the trial court's denial of his suppression motion. In his twelfth claim he argues that his arrest and the police search of the apartment violated his Fourth Amendment rights.

-23-

1.   <u>Ineffective Assistance of Trial Counsel</u>

The state habeas court found that Jones filed three motions to suppress the evidence seized in connection with his arrest.  SH at 538.   The court further found that the police entered Brenda Pickrom's apartment without consent or a search warrant, but that Pickrom arrived shortly after they entered, asked what was going on, and then consented to a search.   The police saw and arrested Jones before Pickrom consented.   <u>Id.</u> at 539-40.   Following Pickrom's consent, the police searched the apartment and found a pistol, magazine, and the clothes Jones wore when he shot Soboleski.   <u>Id.</u> at 540-41.   Jones subsequently confessed to shooting Soboleski.   <u>Id.</u> at 541.

Brenda Pickrom gave a statement to the police and testified before the grand jury, at the suppression hearing, and at trial. In her statement she acknowledged that she gave consent to the police to search, and did so after seeing Jones in handcuffs.  She also stated that although she and Jones knew each other and she had no objection to his being there, Jones did not have her consent to be in the apartment.  She was intoxicated when she gave the police consent to search, but stated that she did not give consent merely because she was intoxicated.

Pickrom submitted an affidavit in connection with Jones' state habeas application claiming that she gave consent because she was tired and scared and did not want to make trouble.  Her affidavit also contradicted her previous statements about Jones having

permission to be in the apartment, stating that he had her ongoing consent to enter.  Id. at 544-48.

The state habeas court found that Jones did not have Brenda Pickrom's consent to be in the apartment and that no search was conducted until after she gave consent.  The court also found not credible her explanation for why she was mistaken in her original statement and testimony regarding her permission for Jones to be in the apartment -- that she misunderstood the prosecutor's questions at both the suppression hearing and the guilt-innocence phase of trial.  The court further found that Jones entered the apartment for the sole purpose of avoiding arrest and, therefore, had no expectation of privacy in the apartment.  Id. at 550-52.

To prevail on a claim for ineffective assistance of counsel Petitioner

> must show that . . . counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed
> by the Sixth Amendment.  Second, the [petitioner] must
> show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  Based on the state habeas court's findings, it is clear that Jones would not have prevailed on his suppression motion even if counsel did everything Jones now claims they failed to do.

### a.   Reasonable Expectation of Privacy

[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he

-25-

personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

Minnesota v. Carter, 525 U.S. 83, 88 (1998) (internal quotation marks and citations omitted).  Brenda Pickrom stated on three separate occasions that Jones had no permission to be in her apartment.  She contradicted these statements in her affidavit in support of Jones' state petition.  The state habeas court was not unreasonable in concluding that her first three statements on this issue, including at least two made under oath in open court and subject to cross-examination, were credible, and that her post hoc attempt to explain these statements away was not credible. Moreover, the evidence cited by Jones showing that he had been in Pickrom's apartment on other occasions does not mean that he had ongoing consent to be there any time he wished.  The state court's conclusion that Jones had no reasonable expectation of privacy is entitled to deference.

b.   Inevitable Discovery

The evidence also establishes that Pickrom consented to the search of her apartment upon her return home.  While her later affidavit states that she was tired and scared, there is no evidence that her consent was coerced or in any way involuntary. She was intoxicated, but testified that her intoxication was not the sole reason she consented.  While her "intoxication is a factor

-26-

to consider . . . that fact alone is not sufficient to undermine [her] consent." United States v. Hall, 565 F.2d 917, 921 (5th Cir. 1978).   Therefore, even if the police initially entered the apartment in violation of the Fourth Amendment, they inevitably would have found Jones and the evidence a short time later upon receiving Pickrom's consent to search.   The evidence would thus have been admitted.   See Nix v. Williams, 467 U.S. 431 (1984). Because it is clear that the investigation Jones claims counsel failed to perform would not have changed the result of the suppression motion, Jones cannot demonstrate prejudice and is not entitled to relief on this claim.

    2.   Ineffective Assistance of Appellate Counsel

In his ninth claim Jones contends that his appellate counsel was ineffective for failing to challenge ths trial court's denial of his suppression motion.   A defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under State law.   Evitts v. Lucey, 469 U.S. 387, 395 (1985).  The Strickland two-prong standard applies to claims of ineffective assistance of appellate counsel.   Duhamel v. Collins, 955 F.2d 962, 967 (5th Cir. 1992).

Jones raised this claim for the first time in his fourth state habeas application.   The TCCA summarily dismissed the application. Petitioner argues that because the TCCA dismissed under § 5(a) without specifying whether dismissal was premised on a failure to

-27-

satisfy state procedural law or the federal merits, a federal habeas court must presume that dismissal was premised on the merits.

In Hughes v. Quarterman, 530 F.3d 336 (5th Cir. 2008), as here, the TCCA dismissed under § 5(a) without specifying the basis for dismissal.  The Fifth Circuit concluded that an adequate and independent state procedural basis for dismissal was evident because it was plain that the factual and legal bases for the petitioner's claims were available well before he filed his subsequent habeas application, and because there was "nothing in [the TCCA's perfunctory dismissal of the claims that suggest[ed] that it actually considered or ruled on the merits." Id. at 342.

It is clear that the factual and legal bases of this claim were available when Jones filed his initial state habeas application.  There is no basis in the TCCA's terse dismissal to infer that the court considered or ruled on the federal merits. Accordingly, the dismissal of Petitioner's subsequent habeas application was premised on an adequate and independent state procedural ground.  See Balentine v. Thaler, 626 F.3d 842 (5th Cir. 2010).  Jones does not demonstrate cause for this default. Therefore, this court cannot review this claim.

### 3.   Fourth Amendment

In his twelfth claim Jones raises a freestanding Fourth Amendment claim, alleging that his arrest and the police search of

Brenda Pickrom's apartment violated his right to be free from unreasonable searches and seizures. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). Jones argues that he did not receive a full and fair opportunity to litigate this issue. The record shows, however, that he filed three separate suppression motions, and the trial court conducted a full hearing on the issue over the course of two days. Jones had the opportunity to present witnesses, to cross-examine the State's witnesses, and to argue the law. It is clear that Jones had a full and fair opportunity to litigate this issue. Therefore, this claim is not cognizable.

**E.   Juror-Related Issues**

In his sixth and thirteenth claims for relief Jones alleges that his counsel was ineffective for allowing one juror to be seated, and the juror's presence on the jury denied him his right to an impartial jury. Prospective jurors filled out a question- naire designed to elicit their views on capital punishment. Betty Lou Pecora gave answers indicating that she strongly favored the death penalty, denied "any health problems (e.g., sight, hearing, emotional, etc.)," and denied that she knew anyone with training or

employment in law enforcement.  She reported that she is politi-
cally conservative, does not believe that the criminal laws are too
harsh and does believe they are too lenient.  She also stated that
she is "strongly in favor of capital punishment as an appropriate
penalty," and indicated her approval of the death penalty elsewhere
in her questionnaire.  She also indicated, however, that her
sentencing decision would be based on the facts and circumstances
of the case.  SH at 174-83.  During individual <u>voir dire</u>, the
prosecutor informed her that Texas law allowed for a sentence of
either life or death, and asked her if she thought death should
automatically be imposed on someone convicted of capital murder.
She stated that she agreed with the law and could assess either
punishment, depending on the facts of the case.  15 Tr. at 956-57.
She stated that her answers to the special issues would depend on
the facts and understood that the State bore the burden of proof.
<u>Id.</u> at 960-61.  She also stated that she could not find that a
defendant would be a future danger based solely on the facts of the
crime.  <u>Id.</u> at 962-63.  She reiterated this view during questioning
by defense counsel.  <u>Id.</u> at 976-77.  Pecora acknowledged that she
was impressed that Johnny Holmes, then the Harris County District
Attorney, would be trying the case, but stated that she would not
see Holmes or his evidence as inherently more credible.  <u>Id.</u> at
985-87.

Approximately three weeks after both sides accepted Pecora as
a juror, Assistant District Attorney Lyn McLellan notified the

-30-

court and defense counsel that he received a phone call from Assistant District Attorney Harriet Zivley, a "distant relative by marriage" to Pecora.   Zivley reported that one of Pecora's daughters-in-law was a probation officer.   When she heard that Pecora was selected as a juror, she called Zivley and reported that she believed Pecora may have suffered from mental illness in the past and may have been civilly committed at some time in the past. McLellan stated that he contacted the daughter-in-law, but that she did not want to speak to him out of concern for Pecora's privacy. McLellan also stated that he requested that Pecora's son call the court in the morning if he shared his wife's concerns.   The judge stated that he had not received such a call, and McLellan stated that he would attempt to contact Pecora's son.   25 Tr. at 3029-31.

Pecora's son appeared in court.   Defense counsel moved to dismiss Pecora as a juror, but agreed to hear from her son first. Mark Pecora then testified that his mother had been diagnosed as manic-depressive and had been hospitalized five times over the previous 20 years, but never committed.   He also testified that she was seeing a psychiatrist four times a year, taking her medication, and doing well.   His concern, he explained, was not that she was mentally unfit to serve on the jury, but that her mental health history might come to light in post-trial litigation.   He also stated that his mother did not know that anyone contacted McLellan or the court.   Id. at 3067-75.   At the end of the hearing, defense counsel stated that he had no objection to Pecora serving as a

juror.  Id. at 3080.  In an affidavit submitted in connection with
Jones' state habeas application, counsel stated that Jones' guilt
was "a foregone conclusion," and the defense strategy was to focus
on the penalty phase.  Jones and both of his defense counsel
discussed the pros and cons of allowing Pecora to serve, but
thought she might waver on imposing a death sentence.  They
therefore elected not to object.  SH at 641.

### 1.  Ineffective Assistance of Counsel

In his sixth claim Jones contends that counsel rendered
ineffective assistance by allowing Pecora to sit as a juror without
objection.  The state habeas court found the pertinent facts
discussed above.  The court also found that Jones failed to prove
that Pecora was challengeable for cause under Texas law.  The court
further found that Pecora's negative answers to the question about
mental health problems was not a misstatement or attempt to conceal
information, but was based on a reasonable interpretation of the
question as pertaining to current health problems that would affect
her ability to serve as a juror.  The court also found that Jones
was not harmed by any alleged misstatements on the questionnaire,
and that the decision to seat Pecora was based on counsel's trial
strategy of seeking jurors who would waver on the death penalty.
SH at 552-54.  The court concluded that Jones failed to prove
either deficient performance by counsel or prejudice, and that
counsel's trial strategy was plausible.  Id. at 563-64.

Judicial scrutiny of counsel's performance must be highly
deferential.  It is all too tempting for a defendant to
second-guess counsel's assistance after conviction or
adverse sentence, and it is all too easy for a court,
examining counsel's defense after it has proved
unsuccessful, to conclude that a particular act or
omission of counsel was unreasonable.  Cf. *Engle v.
Isaac*, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575,
71 L.Ed.2d 783 (1982).  A fair assessment of attorney
performance requires that every effort be made to
eliminate the distorting effects of hindsight, to
reconstruct the circumstances of counsel's challenged
conduct, and to evaluate the conduct from counsel's
perspective at the time.  Because of the difficulties
inherent in making the evaluation, a court must indulge
a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance;
that is, the defendant must overcome the presumption
that, under the circumstances, the challenged action
"might be considered sound trial strategy."  See *Michel
v. Louisiana*, supra, 350 U.S. at 101, 76 S.Ct. at 164.
There are countless ways to provide effective assistance
in any given case.  Even the best criminal defense
attorneys would not defend a particular client in the
same way.

<u>Strickland</u>, 466 U.S. at 689.  Based on the highly deferential

standard under which courts review counsel's strategic decisions,

Jones does not demonstrate that the state habeas court's conclusion

was unreasonable.

Establishing that a state court's application of
*Strickland* was unreasonable under § 2254(d) is . . .
difficult.  The standards created by *Strickland* and
§ 2254(d) are both "highly deferential," *id.* at 689 [104
S.Ct. 2052]; *Lindh v. Murphy,* 521 U.S. 320, 333, n.7, 117
S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two
apply in tandem, review is "doubly" so, *Knowles [v.
Mirzayance],* 556 U.S. at ____, 129 S.Ct. [1411] at 1420
[(2009)].  The *Strickland* standard is a general one, so
the range of reasonable applications is substantial.  556
U.S. at ____ [129 S.Ct. at 1420].  Federal habeas courts
must guard against the danger of equating unreasonable-
ness under *Strickland* with unreasonableness under
§ 2254(d).  When § 2254(d) applies, the question is not

> whether counsel's actions were reasonable.  The question
> is whether there is any reasonable argument that counsel
> satisfied *Strickland*'s deferential standard.

Premo v. Moore, ___ U.S. ___, 131 S.Ct. 733, 740 (2011).

Counsel made a strategic decision based on the judgment that Pecora might waver on the death penalty.  The TCCA's conclusion that this was a reasonable strategic decision was reasonable.

2.   Impartial Jury

In his thirteenth claim Jones argues that Pecora's presence on the jury denied him his right to be tried by an impartial jury. Respondent argues that this claim is procedurally defaulted, but Jones presented it in his amended state habeas application, and the state habeas court expressly found that Jones was not denied his right to an impartial jury.

It is axiomatic that a criminal defendant is entitled to trial by an impartial jury. See, e.g., Turner v. Louisiana, 379 U.S. 466 (1965).  Jones cites cases involving ex parte communications between a party and a juror, or attempts to influence or intimidate jurors, and argues that the matters set out above are tantamount to the same kind of jury tampering.  The problem with Jones' argument is that there is no evidence that anybody had any improper communication with Pecora.  Rather, relatives of Pecora contacted someone in the District Attorney's office with their concerns about her mental health history, and that person contacted one of the Assistant District Attorneys trying the case.  That Assistant

-34-

District Attorney had a subsequent phone conversation with the relative and asked that Pecora's son contact the court.  There is no evidence that Pecora's son ever did so, but he did appear in court and testified under oath about his mother's mental health history and status.  There is no evidence that Pecora was aware of any of this.  Jones fails to show any bias on Pecora's part, and the state habeas court's conclusion that Jones is not entitled to relief was not an unreasonable one.

**F.    Ineffective Assistance of Counsel**

    1.    <u>Failure to Retain Ballistics Expert</u>

In his seventh claim for relief Jones contends that his counsel rendered ineffective assistance by not retaining a ballistics expert.  Jones did not present this claim to the Texas state courts until his fourth state habeas application, which the TCCA summarily dismissed.  Jones argues that the summary dismissal does not make clear that the TCCA relied on an independent and adequate state ground, and that <u>Michigan v. Long</u>, 463 U.S. 1032 (1983), therefore requires a presumption that the TCCA dismissed the claim on the merits.  The Fifth Circuit, however, recently made clear that Jones' argument is wrong.  <u>See</u> <u>Balentine v. Thaler</u>, 626 F.3d 842 (5th Cir. 2010).

Article 11.071 § 5 of the Texas Code of Criminal Procedure addresses successive habeas applications.  Section 5(a)(1) bars a successive application unless the claim could not have been

presented in a timely application "because the factual or legal
basis for the claim was unavailable on the date the applicant filed
the previous application." Sections 5(a)(2) and (3) prohibit
consideration of successive applications unless the applicant
clears certain specified hurdles regarding the merits of the claim.
Jones argues that because the TCCA merely cited the statute without
specifying reliance on § 5(a)(1), this court cannot presume that it
relied on that independent and adequate state ground. In Balentine
the Fifth Circuit made clear that the TCCA looks first to
section 1, and only if the requirements of that section are met
does it look to the merits of the claim. Thus, if the factual and
legal bases for the claim existed when a timely application was
filed, a summary dismissal is based on the untimeliness of the
successive application and not on a merits determination. The
Supreme Court recently agreed.

> When a federal claim has been presented to a state court
> and the state court has denied relief, it may be presumed
> that the state court adjudicated the claim on the merits
> **in the absence of any indication or state-law procedural
> principles to the contrary.** Cf. *Harris v. Reed*, 489 U.S.
> 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)
> (presumption of a merits determination when it is unclear
> whether a decision appearing to rest on federal grounds
> was decided on another basis). **The presumption may be
> overcome when there is reason to think some other
> explanation for the state court's decision is more
> likely.** See, *e.g., Ylst v. Nunnemaker,* 501 U.S. 797,
> 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 784-85 (2011)
(emphasis added). Because the factual and legal bases of this
claim were available when Jones filed his first state application,

there is no reason to believe that the TCCA looked past section 5(a)(1). Therefore, the TCCA dismissed this claim on an independent and adequate state procedural ground, and the claim is procedurally defaulted.

### 2. Failure to Investigate Mitigation Evidence

In his eighth claim for relief Jones contends that counsel were ineffective for failing to investigate and present mitigating evidence. Jones did not present this claim to the Texas courts until his fourth habeas application. For the same reasons relevant to his previous claim, this claim is procedurally defaulted.

## G. Cumulative Error

In his tenth and eleventh claims for relief Jones argues that the cumulative effects of the alleged ineffective assistance of counsel and Brady error entitle him to relief. Even if each individual instance of alleged error, standing alone, is insufficient to justify relief, cumulative error may provide a basis for habeas relief if the cumulative effect of the errors was to deny the defendant due process. See Derden v. McNeel, 978 F.2d 1453, 1457-58 (5th Cir. 1992). To reach the level of a denial of due process, however, the errors must amount to

> the failure to observe that fundamental fairness
> essential to the very concept of justice. In order to
> declare a denial of it we must find that the absence of
> that fairness fatally infected the trial; the acts
> complained of must be of such quality as necessarily
> prevent a fair trial.

-37-

Lisenba v. California, 314 U.S. 219, 236 (1941) (quoted in Derden, 978 F.2d at 1457).

As discussed above, Jones fails to prove that counsel was deficient, and the alleged Brady evidence is immaterial. Accordingly, no error is so significant as to "necessarily prevent a fair trial."

**H.    Sufficiency of the Evidence**

In his final claim for relief Jones contends that the evidence was insufficient to support the jury's finding that he posed a future danger.  In addressing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  The sufficiency of evidence is a mixed question of law and fact.  See Gomez v. Acevedo, 106 F.3d 192, 198 (7th Cir.), vacated on other grds., 522 U.S. 801 (1997). Therefore, as noted above, this court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]."  Martin v. Cain, 246 F.3d 471, 475 (5th Cir. 2001).

In rejecting this claim on Jones' appeal, the TCCA concluded that Jones

-38-

shot and killed a uniformed peace officer at close range
for no apparent reason.  After [Soboleski] fell to the
ground [Jones] shot [Soboleski] again.  While fleeing,
[Jones] fired at a civilian rider who was seated in a
marked police car.  There is no evidence the crime was
committed at the behest or direction of [Jones']
companion, nor is there evidence of duress or domination
by another at the time of the commission of the offense.
[Jones'] crime was unprovoked, cold-blooded and his
alone.  While the circumstances of the offense may in
some instances be sufficient in themselves to sustain an
affirmative answer to the second punishment issue, there
was additional evidence to support the jury's finding in
this case.

Jones v. State, No. 71,369, slip op. at 7 (Tex. Crim. App. May 4,
1994).  The court then noted Jones' prior criminal record,
probation violations, illegal possession of firearms, a recent
armed robbery that included a death threat, and Jones' "empty
vessel" personality, which left him uniquely susceptible to
negative (as well as positive) influences in prison, including
prison gangs.  Based on this evidence the TCCA's conclusion that
the evidence was sufficient to support the finding of future
dangerousness is not an unreasonable application of the Jackson
standard.

## IV.  Certificate of Appealability

Although Jones has not requested a certificate of
appealability ("COA"), the court may nevertheless determine whether
he is entitled to this relief in light of the court's rulings.  See
Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) ("It is
perfectly lawful for district court's [sic] to deny a COA sua
sponte.  The statute does not require that a petitioner move for a

COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued."). A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. See Whitehead v. Johnson, 157 F.3d 384, 388 (5th Cir. 1988); see also Hill v. Johnson, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also United States v. Kimler, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir.), cert. denied, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demon-strate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the

-40-

prisoner shows, at least, that jurists of reason would
find it debatable whether the petition states a valid
claim of the denial of a constitutional right and that
jurists of reason would find it debatable whether the
district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000). "[T]he determination

of whether a COA should issue must be made by viewing the

petitioner's arguments through the lens of the deferential scheme

laid out in 28 U.S.C. § 2254(d)." Barrientes v. Johnson, 221

F.3d 741, 772 (5th Cir. 2000), cert. dismissed, 531 U.S. 1134

(2001).

The court has carefully considered each of Jones' claims and

concludes that each of the claims, with the exception of Jones'

Penry and fair trial claims, is foreclosed by clear, binding

precedent, and Jones thus fails to make a "substantial showing of

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The court grants relief on the merits of the Penry claim and

concludes that reasonable jurists could disagree whether Jones'

fair trial claim is procedurally defaulted. The court therefore

concludes that Jones is entitled to a certificate of appealability

only on his fair trial claim.

## V.  Conclusion and Order

For the foregoing reasons, it is **ORDERED** as follows:

1.    Respondent Rick Thaler's Motion for Summary
      Judgment(Docket Entry No. 32) is **GRANTED IN PART
      AND DENIED IN PART**;

2.    Petitioner Shelton Denoria Jones' First Amended
      Petition for a Writ of Habeas Corpus (Docket Entry

-41-

No. 7) is **GRANTED IN PART AND DENIED IN PART**. Jones' Amended Petition is **GRANTED** as to Claim I and is **DISMISSED WITH PREJUDICE** as to all other claims;

3.  Jones's Cross-Motion for Partial Summary Judgment (Docket Entry No. 33) is **GRANTED**;

4.  Respondent shall release Jones from custody unless, within 120 days, the State of Texas grants Jones a new sentencing hearing or resentences him to a sentence less than death in accordance with the law applicable at the time of Jones' offense; and

5.  A Certificate of Appealability shall issue only as to this court's finding that Jones' fair trial claim (Claim III) is procedurally defaulted.

**SIGNED** at Houston, Texas, on this the 3rd day of March, 2011.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-42-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SHELTON DENORIA JONES,           §
                                 §
          Petitioner,            §
                                 §
v.                               §
                                 §   CIVIL ACTION NO. H-09-1825
RICK THALER, Director,           §
Texas Department of Criminal     §
Justice-Correctional             §
Institutions Division,           §
                                 §
          Respondent.            §

**<u>FINAL JUDGMENT</u>**

For the reasons set forth in the court's Memorandum Opinion
and Order granting in part and denying in part Respondent Rick
Thaler's Motion for Summary Judgment (Docket Entry No. 32) and
granting in part and denying in part Petitioner Shelton Denoria
Jones's First Amended Petition for a Writ of Habeas Corpus (Docket
Entry No. 7) issued this day, judgment is entered for the
petitioner with regard to the first ground for relief raised in his
petition.  Respondent shall release Jones from custody unless,
within 120 days of the entry of this judgment, the State of Texas
grants Jones a new sentencing hearing or resentences him to a
sentence less than death in accordance with the law applicable at
the time of Jones' offense.

Judgment is entered for Respondent on all other grounds for relief raised in Jones' petition. These claims are **DISMISSED WITH PREJUDICE**.

With the exception of the claim on which relief is granted and his third claim for relief, Petitioner Jones has not made a substantial showing of the denial of a constitutional right. A certificate of appealability shall issue only as to the third claim for relief. This judgment is **STAYED** pending the conclusion of all appeals.

This is a **FINAL JUDGMENT**.

**SIGNED** at Houston, Texas, on this the 3rd day of March, 2011.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-2-