# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 15-70040

---

4:09-CV-1825

SHELTON DENORIA JONES,

Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2018

Lyle W. Cayce
Clerk

United States District Court
Southern District of Texas
FILED

JUN 0 6 2018

David J. Bradley, Clerk of Court

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before OWEN and SOUTHWICK, Circuit Judges.[*]

PRISCILLA R. OWEN, Circuit Judge:

Shelton Denoria Jones's petition for panel rehearing is denied. The panel's prior opinion, issued March 27, 2018, is withdrawn. This opinion is substituted in its place.

Jones was convicted of the capital murder of a police officer and sentenced to death in Texas state court. Jones asserts he is entitled to federal habeas relief on his claim that the press coverage of the crime and the presence

---

[*] Judge Edward Prado, a member of the original panel in this case, retired from the Court on April 2, 2018, and therefore did not participate in the revised opinion. The new opinion is issued by a quorum. 28 U.S.C. § 46(d).

No. 15-70040

of uniformed police officers in the gallery during his trial created an inherently prejudicial atmosphere that violated his right to a fair trial. The federal district court denied Jones's request for discovery on this issue and denied relief on the merits, but granted a Certificate of Appealability (COA). We affirm the judgment of the district court.

In prior proceedings Jones sought and has been granted a new sentencing phase on his claim that, in violation of *Penry v. Lynaugh,* [1] the Texas special issues did not provide an adequate vehicle for the jury to give full consideration to his mitigation evidence. [2] His fair trial claim therefore pertains only to the guilt/innocence phase of his trial.

## I

Jones was charged with capital murder of a police officer in Houston, Texas. Media coverage followed the crime, including an editorial calling for charges to be filed against Jones and a letter to the editor suggesting Jones be hung from a "tall tree" with a "short rope." Jones moved unsuccessfully for a change of venue to diminish the effects of the pre-trial publicity. Uniformed officers attended each day of Jones's trial, in varying numbers. Jones was convicted of capital murder and sentenced to death. The Texas Court of Criminal Appeals (TCCA) affirmed Jones's conviction and sentence on direct appeal. [3]

The TCCA appointed habeas counsel. With leave of the state habeas court, Jones submitted an incomplete application for state habeas relief in order to comply with newly-enacted filing deadlines under the Antiterrorism and Effective Death Penalty Act (AEDPA). [4] As the state-law imposed deadline

---

[1] 492 U.S. 302 (1989).

[2] *Jones v. Stephens*, 541 F. App'x 399, 400 (5th Cir. 2013) (per curiam).

[3] *Jones v. State*, No. 71,369 (Tex. Crim. App. May 4, 1994) (en banc) (not designated for publication).

[4] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

2

No. 15-70040

approached, Jones filed an amended application that raised several grounds for relief but did not raise the fair trial claim presented here. Attributing the omission of the fair trial claim to a "fault in the word processor used by his counsel," Jones then filed—before the state-law deadline had passed—a document styled Errata and Corrections to Amended Application, which included the claim at issue here. After the deadline had passed, Jones filed a supplemental application consolidating both previous filings for ease of reference. This petition included evidence of the officers' attendance at the trial, but much of the evidence of media coverage that was included in Jones's federal petition was not included in his state application.

The state trial court recommended that the TCCA deny relief on all of Jones's claims. The trial court's recommendation noted that Jones "failed to urge [the fair trial claim] as a point of error on direct appeal" and that in any event, Jones had not shown that the presence of the officers was either inherently or actually prejudicial. The TCCA rejected Jones's claim on procedural grounds. Determining, without reference to the Errata, that the fair trial claim was not raised until after the filing deadline for the state habeas petition, it concluded that the supplemental application was a subsequent application for writ of habeas corpus under section 5 of Texas Code of Criminal Procedure article 11.071 and dismissed the fair trial claim as an abuse of the writ.[5] The TCCA "also expressly reject[ed] all findings and conclusions related" to the fair trial claim.[6]

Jones filed his initial federal habeas petition in 2006, and, after various procedural delays not relevant here, the district court granted Jones a new

---

[5] *Jones v. Texas*, Nos. WR-62,589-01 & WR-62,589-02, slip op. at 2 (Tex. Crim. App. Oct. 26, 2005) (per curiam) (not designated for publication).
[6] *Id.*

No. 15-70040

sentencing hearing based on his *Penry* claim and denied the remaining claims, including the fair trial claim.[7]  The district court held that federal review of the fair trial claim was barred because the TCCA's dismissal was based on an independent and adequate state procedural ground, but it granted a certificate of appealability (COA) on that issue.[8]  This court affirmed the district court's grant of relief on Jones's *Penry* claim.[9]  Because the district court granted the COA on the fair trial claim without making the required determination that "reasonable jurists could find it debatable whether the petition states a valid claim of the denial of a constitutional right," we vacated the COA and remanded the case for the district court to consider the question in the first instance.[10]  We dismissed or denied Jones's cross-appeal and applications for COAs on other claims.[11]  On remand, the district court issued a COA supported by appropriate findings.[12]

We subsequently held Jones's fair trial claim was not procedurally barred and remanded the case to the district court for a decision on the merits.[13]  The district court ordered supplemental briefing but denied Jones's motions for discovery and investigative services.  The district court subsequently determined that Jones was not entitled to relief on the fair trial claim but issued a COA.[14]

---

[7] *Jones v. Thaler*, 2011 WL 1044469, at *5, *18 (S.D. Tex. Mar. 3, 2011).
[8] *Id.* at *7.
[9] *Jones v. Stephens*, 541 F. App'x 399, 400 (5th Cir. 2013) (per curiam).
[10] *Id.* at 409-10.
[11] *Id.* at 413.
[12] *Jones v. Stephens*, 2014 WL 243251, at *2 (S.D. Tex. Jan. 22, 2014).
[13] *Jones v. Stephens*, 612 F. App'x 723, 729-30 (5th Cir. 2015) (per curiam).
[14] *Jones v. Stephens*, 2015 WL 6553855, at *5-6 (S.D. Tex. Oct. 28, 2015).

4

No. 15-70040

## II

The State contends that Jones's fair trial claim is barred by the non-retroactivity principle announced in *Teague v. Lane*, which precludes the creation of "new constitutional rules of criminal procedure" on federal habeas review.[15]  The State argues that Jones seeks to have this court recognize the applicability of the test announced in *Holbrook v. Flynn*[16] to purely private spectator activity.   Jones counters that he relies on a rule of general applicability to a specific set of facts but does not seek a new rule.[17]  The State acknowledges that it failed to raise this issue before the district court.  This court has previously determined, however, that "absent a compelling, competing interest of justice in a particular case, a federal court should apply *Teague* even though the State has failed to argue it."[18]

It is not clear whether the challenged conduct is purely private.  Jones's primary complaint is that the Houston Police Department officers were in their uniforms during his trial.  At the very least, this raises a question as to whether there was some state involvement in the officers' presence at trial.  But this court is not the proper court to consider this fact-bound issue in the first instance.  The State's failure to present this issue in the district court, despite raising it in a prior appeal before this court, and despite the district court's order to provide supplemental briefing on the fair trial claim, has prevented the development of the record on this issue.  Given this lack of development below, we pretermit the *Teague* analysis and review the district court's decision on the merits.

---

[15] *Teague v. Lane*, 489 U.S. 288, 316 (1989) (plurality opinion); *see also Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013).

[16] 475 U.S. 560, 567-68 (1986).

[17] *See Chaidez*, 133 S. Ct. at 1107.

[18] *Jackson v. Johnson*, 217 F.3d 360, 363 (5th Cir. 2000).

No. 15-70040

### III

The TCCA expressly denied Jones's fair trial claim on procedural grounds and rejected "all findings and conclusions" made by the trial court with respect to that claim.[19]   The State asserts that much of the media-related evidence Jones presented in his federal habeas petition should not be considered because it was not presented to the state court and is therefore barred from consideration under 28 U.S.C. § 2254(e)(2).   "Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so."[20] AEDPA limits a federal habeas court's review of a claim that has been adjudicated on the merits in state court to the state court record.[21]   However, the highest state court expressly rejected all findings and conclusions made by the lower habeas court and decided the case on procedural grounds.[22]   Because there was no decision on the merits, 28 U.S.C. § 2254(d) is inapplicable to this claim.[23]   Similarly, because the TCCA decided the case on procedural grounds, there was no "determination of a factual issue made by a State court" to which the federal court could have deferred under § 2254(e)(1).[24]

---

[19] *Jones v. Texas*, Nos. WR-62,589-01 & WR-62,589-02, slip op. at 2 (Tex. Crim. App. Oct. 26, 2005) (per curiam) (not designated for publication).

[20] *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011).

[21] 28 U.S.C. § 2254(d).

[22] *Jones*, slip op. at 2.

[23] *See Pinholster*, 563 U.S. at 185-86 (explaining the difference in applicability of § 2254(d)(1) to cases decided on the merits and of § 2254(e)(2) to cases not decided on the merits in state court); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (determining AEDPA to be inapplicable when the state court rejected the claim on purely procedural grounds).

[24] 28 U.S.C. § 2254(e)(1) (affording state court determinations of fact a presumption of correctness); *see Williams v. Quarterman*, 551 F.3d 352, 358-59 (5th Cir. 2008) (explaining that "a state habeas trial court's factual findings do not survive review by the [TCCA] where they [are] neither adopted nor incorporated into the appellate court's peremptory denial of relief"); *see also Williams v. Taylor*, 529 U.S. 420, 434-37 (2000) (holding that a prisoner who does not diligently endeavor to develop material facts in state court cannot obtain an

6

No. 15-70040

The State points out that § 2254(e)(2) applies regardless of whether there was a merits determination in state court.[25] Section 2254(e)(2) provides that federal district courts "shall not hold an evidentiary hearing" to consider evidence if the habeas applicant "has failed to develop the factual basis of a claim in State court proceedings" unless the stringent requirements of § 2254(e)(2)(A) and (B) are met.[26] The Supreme Court has established that an applicant "fail[s] to develop" the factual basis of claim if there is a "lack of diligence" in presenting the evidence in state court.[27] Section 2254(e)(2) accordingly requires us to determine whether Jones was diligent in attempting

---

evidentiary hearing in federal court); *Pinholster*, 563 U.S. at 185-86 (explaining the difference in applicability of § 2254(d)(1) and § 2254(e)(2), and noting that the latter retains significance for cases not decided on the merits in state court); *Fisher*, 169 F.3d at 300 (holding that a state court's "awareness of, and explicit reliance on, a procedural ground to dismiss [the petitioner's] claim is determinative . . . and [the court] therefore cannot apply the AEDPA deference standards to the state court's findings and conclusions").

[25] *See Pinholster*, 563 U.S. at 185-86.

[26] 28 U.S.C. § 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
    (A) the claim relies on—
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

[27] *Williams*, 529 U.S. at 432, 434-37 ("For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."); *see also Pinholster*, 563 U.S. at 186; *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998).

7

No. 15-70040

to present the media reports in the state proceeding.[28]  We conclude that he was not.

Jones failed to exercise due diligence by not introducing the media reports until more than a decade after they were written, his attempts to obtain discovery and investigative services notwithstanding.  "Diligence for purposes of the opening clause [of § 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court."[29] When the evidence the applicant seeks to present before a federal tribunal could have been easily obtained and introduced to the state court, the due diligence requirement is not satisfied.  In *Holland v. Jackson*,[30] for example, a habeas applicant sought to introduce testimony to impeach the credibility of an eyewitness seven years after his conviction.[31]  The Supreme Court observed that under § 2254(e)(2), it was "difficult to see . . . how [the applicant] could claim due diligence given the 7-year delay."[32]  Similarly, in *Dowthitt v. Johnson*, this court held that because the applicant could have easily obtained and introduced the affidavits from family members that he sought to introduce in federal court, he did not exercise due diligence merely by requesting an evidentiary hearing in state habeas proceedings.[33]  A "reasonable person in [the applicant's] place," we said, would have obtained the inexpensive affidavits and attempted to present them in state court.[34]

---

[28] *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) ("[T]he petitioner must be diligent in pursuing the factual development of his claim.").

[29] *Williams*, 529 U.S. at 435.

[30] 542 U.S. 649 (2004).

[31] *Id.* at 653.

[32] *Id.*

[33] 230 F.3d at 758.

[34] *Id.*

8

No. 15-70040

In this case, all of the articles that Jones seeks to produce were written in 1991. Jones submitted his proposed conclusions of law on his fair trial claim in the state-court proceedings on March 24, 2003—twelve years later—without mentioning the articles. Jones did not introduce the articles until he filed his federal habeas petition on June 11, 2009, approximately eighteen years after the reports were published. Jones's lengthy delay in producing publicly-available news reports does not constitute due diligence. That Jones requested discovery and investigative services in federal district court does not mitigate his lack of diligence in obtaining the eighteen-years-old media reports.[35] The publicly-available reports could have been obtained easily and inexpensively in the twelve years before Jones submitted his proposed conclusions of law to the state court.

Because Jones's lack of diligence means he "failed to develop the factual basis of a claim," we must determine whether the media reports Jones proffers in his federal habeas petition meet the stringent requirements of § 2254(e)(2). They do not. Jones does not, and could not, allege that the media reports concern "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."[36] With regard to § 2254(e)(2)(A)(ii), the media reports Jones seeks to introduce existed at the time of the state proceeding, so they do not constitute "a factual predicate that could not have been previously discovered through the exercise of due diligence."[37] Because the media reports in Jones's federal petition do not satisfy the requirements of § 2254(e)(2)(A)'s conjunctive test, we do not consider the reports.

---

[35] *See id.*

[36] 28 U.S.C. § 2254(e)(2)(A)(i).

[37] *Id.* § 2254(e)(2)(A)(ii); *Williams v. Taylor*, 529 U.S. 420, 435-36 (2000).

9

No. 15-70040

We reach this conclusion even though the text of § 2254(e)(2) expressly limits federal courts from conducting "evidentiary hearings" and Jones sought only to include documentary evidence of the media reports in his federal habeas petition.   In *Holland*, the Supreme Court rejected the applicant's attempts to introduce new evidence through means of a motion for a new trial and observed that § 2254(e)(2)'s restrictions on federal-court fact-finding "apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an evidentiary hearing."[38]   Accordingly, § 2254(e)(2) bars federal courts from considering the media reports included in Jones's federal petition.

## IV

After carefully reviewing the record, we conclude that Jones's fair trial claim does not warrant habeas relief.

### A

"A fair trial in a fair tribunal is a basic requirement of due process."[39] Whenever a courtroom arrangement is challenged as inherently prejudicial, the question must be not whether jurors actually articulated a consciousness of some prejudicial effect, but rather whether "an unacceptable risk is presented of impermissible factors coming into play."[40]   A federal court presented with a claim that the trial atmosphere was inherently prejudicial may only "look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to the

---

[38] *Holland v. Jackson*, 542 U.S. 649, 653 (2004); *see also Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001) ("When expansion of the record is used to achieve the same end as an evidentiary hearing, the petitioner ought to be subject to the same constraints that would be imposed if he had sought an evidentiary hearing.").

[39] *Irvin v. Dows*, 366 U.S. 717, 722 (1961) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

[40] *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986) (quoting *Estelle v. Williams*, 425 U.S. 501, 505 (1976)).

No. 15-70040

defendant's right to a fair trial."[41]   The reviewing court should consider the totality of the circumstances in rendering its decision.[42]   The Supreme Court addressed the presence of uniformed security personnel in the courtroom in *Holbrook v. Flynn*.   Determining that the officer's presence was not inherently prejudicial,[43] the Court noted that a "wide[] range of inferences" might be drawn from officer presence in the courtroom, contrasting prior cases that had focused on "unmistakable mark[s] of guilt"[44] such as prisoner attire, shackles, and gags.[45]   Without "minimiz[ing] the threat that a roomful of uniformed and armed policemen might pose to a defendant's chances of receiving a fair trial,"[46] the Court noted that a "case-by-case" approach, rather than a presumption of prejudice, was appropriate.[47]   Whether the officers' presence created an "unacceptable risk" of "impermissible factors coming into play" should be based on an evaluation of the scene presented to the jury.[48]   The mere presence of four uniformed state troopers "quietly sitting in the first row of a courtroom's spectator section" was insufficient to create such a risk.[49]

More recently, in *Carey v. Musladin*, the Supreme Court considered a state court ruling that buttons displaying the victim's image worn by a victim's family during trial did not deny a defendant his right to a fair trial.[50]   The state appellate court applied the test announced in *Flynn* and, though noting that

---

[41] *Id.* at 572.

[42] *See Sheppard v. Maxwell*, 384 U.S. 333, 352 (1966).

[43] *Flynn*, 475 U.S. at 569, 572.

[44] *Id.* at 569, 571 (citing *Williams*, 425 U.S. at 518).

[45] *Id.* at 568-69 (noting various practices that are a threat to the fairness of the trial, including forcing the defendant to appear in prisoner's clothing throughout trial and binding and gagging the defendant before the jury).

[46] *Id.* at 570-71.

[47] *Id.* at 569.

[48] *Id.* at 570-71.

[49] *Id.* at 571.

[50] 549 U.S. 70 (2006).

11

No. 15-70040

button-wearing should be discouraged, determined that the buttons had not resulted in inherent prejudice to the defendant.[51]  On federal habeas review, the Ninth Circuit, citing its own precedent, concluded that the state court's application of *Flynn* "was contrary to, or involved an unreasonable application of, clearly established federal law."[52]  The Supreme Court pointed out that the application of the test to spectators was "an open question" in its jurisprudence and observed that the "lack of guidance" on the issue had resulted in divergent treatment of spectator conduct claims in lower courts.[53]  It vacated the Ninth Circuit's judgment because "[n]o holding of [the Supreme Court] required the California Court of Appeal to apply the test of *Williams* and *Flynn*" to spectator conduct.[54]

In *Musladin*, the Supreme Court suggested that *Flynn* might not apply to claims involving purely spectator conduct, but it did not affirmatively resolve that issue, nor did it have occasion to consider the test's applicability to cases involving conduct, like that at issue in this case, that is neither clearly private nor clearly state action.[55]  The Supreme Court has recognized that a "carnival atmosphere,"[56] "considerable disruption,"[57] or a case in which the trial judge "los[es] his ability to supervise [the trial] environment"[58] may provide a basis for relief in contexts involving the conduct of the press and the public during trial,[59] suggesting activity not attributable to the state may

---

[51] *Id.* at 73.

[52] *Id.* at 73-74 (quoting 28 U.S.C. § 2254(d)(1)).

[53] *Id.* at 76 (suggesting that *Flynn* and *Williams* might apply only to state-sponsored practices, but concluding only that the state court had not unreasonably applied the *Flynn* test in denying relief to the petitioner).

[54] *Id.* at 77.

[55] *Id.* at 76.

[56] *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966).

[57] *Estes v. Texas*, 381 U.S. 532, 536 (1965).

[58] *Sheppard*, 384 U.S. at 355.

[59] *Estes*, 381 U.S. at 536.

12

No. 15-70040

provide a viable basis for a due process claim premised on the violation of the right to a fair trial.

Our court has not previously assessed the merits of a fair trial claim premised on the conduct of persons in the gallery, though we did note in *Mata v. Johnson* that "the combined effects of excessive pretrial publicity, conspicuous presence of heavily armed security personnel in and around the courtroom, installation of surveillance and metal detectors for the duration of the trial, and the intimidating presence of 30–40 uniformed prison guards as spectators in the courtroom throughout [the] trial" could provide the basis of a cognizable constitutional claim.[60]  Though we ultimately remanded the case for the district court to hold an evidentiary hearing, there was no further development of the fair trial claim in federal court.[61]

Jones relies heavily on the Eleventh Circuit's opinion in *Woods v. Dugger*, referenced by this court's opinion in *Mata*.[62]  The petitioner in *Woods* was tried for the murder of a prison guard.[63]  The trial occurred in a rural county of just over 10,000 people, one-third of whom were prisoners, where the prison system constituted a substantial portion of the local economy.[64]  The jurors were all drawn from the county where the guard was killed and where, prior to the trial, the officer's death had "bec[o]me a focal point for the lobbying efforts" of the local correctional facility's employee union.[65]  The officer's sister had circulated a petition, which garnered more than 5,000 signatures, calling

---

[60] *Mata v. Johnson*, 99 F.3d 1261, 1271 (5th Cir. 1996) (citing *Woods v. Dugger*, 923 F.2d 1454 (11th Cir. 1991)), *vacated in part on reh'g*, 105 F.3d 209 (5th Cir. 1997).

[61] *See Mata v. Johnson*, 210 F.3d 324 (5th Cir. 2000) (considering petitioner's competency to waive collateral review);

[62] *See Mata*, 99 F.3d at 1271 n.34.

[63] *Woods*, 923 F.2d at 1455.

[64] *Id.* at 1457-58.

[65] *Id.* at 1458 (noting that most of the jurors who were excused either had relatives or close friends who worked in the prison system, knew of the case, or knew witnesses).

13

No. 15-70040

for the death penalty for those who kill prison guards.[66]  Of the jurors finally selected, only four neither knew of the case nor had relatives working in the prison system.[67]  Photographs of the trial showed that the gallery was completely filled with spectators, about half of whom were uniformed prison guards,[68] and the trial judge had to admonish the spectators to be quiet several times.[69]

The Eleventh Circuit determined that "prejudice ar[ose] from the presence of the uniformed corrections officers in the context of a trial being held in the midst of an angry community."[70]  The court distinguished the presence of the correctional officers from the additional security in *Flynn*, noting that the correctional officers in this case were not providing security or escorting witnesses; rather, they were present solely to "show solidarity with the killed correctional officer" and to communicate to the jury that they "wanted a conviction followed by the imposition of the death penalty."[71]  This scene, combined with the extensive pre-trial publicity, resulted in the conclusion that the trial presented an extreme case that posed "an unacceptable risk [of] impermissible factors coming into play."[72]

In *Hill v. Ozmint*, the Fourth Circuit addressed a fair trial claim based on a large number of uniformed officers in the courtroom and courthouse during trial.[73]  Hill was on trial for the murder of a police officer in a small

---

[66] *Id.* (noting, however, that not all the signatures were from the county where the officer was killed).

[67] *Id.*

[68] *Id.*

[69] *Id.* at 1459.

[70] *Id.*

[71] *Id.* at 1459-60.

[72] *Id.* at 1459 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986)) (alteration in original).

[73] 339 F.3d 187, 197-98 (4th Cir. 2003).

14

No. 15-70040

town and challenged the fairness of his trial in light of pretrial publicity and "rampant . . . emotionalism" in a small community.[74] Though the community was "greatly impacted," nothing in the record suggested the courtroom was filled with officers or that those present were not dispersed.[75] Further, the witnesses were not sequestered, and many officers testified, making their presence in court less likely to suggest the defendant's guilt.[76] The Court determined that the scene presented to the jury did not unacceptably threaten Hill's right to a fair trial.[77]

In *United States v. Thomas*, the Seventh Circuit addressed a fair trial claim premised on the presence of uniformed firefighters, applying many of the same factors considered in similar cases, but without citing *Flynn*.[78] The victim's son was a firefighter, and approximately twenty uniformed firefighters attended closing arguments.[79] Though there were no objections to their presence at closing, the defense moved for a new trial after the verdict.[80] The appellate court noted that no reference to the firefighters' presence in the courtroom had been made in closing arguments, they had not in any way disrupted the proceedings, and nothing suggested they were there for any reason other than to show support for one of their own.[81] The court also noted that no evidence was put forth as to the size of the courtroom or what proportion of the spectators were firemen.[82] The court concluded that the defendant's fair trial claim should be denied.[83]

---

[74] *Id.* at 198 (internal quotation marks omitted).
[75] *Id.* at 200.
[76] *Id.*
[77] *Id.*
[78] 794 F.3d 705, 710 (7th Cir. 2015).
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] *Id.*

15

No. 15-70040

## B

In the present case, the district court found that "uniformed police officers were a visible portion of the spectators in th[e] case," ranging from "one quarter [to] one-third of the spectators," but that nothing "suggest[ed] that their presence or any pretrial publicity had any undue influence or effect on the jury." The district court further reasoned that "Jones was tried in Houston—one of the largest cities in the United States—with a jury pool drawn from the even larger Harris County, Texas" and that "Jones points to no evidence that any juror had a friend or relative who was a police officer." Resting much of its opinion on a comparative analysis of the Eleventh Circuit decision in *Woods*, the district court concluded that Jones "fail[ed] to demonstrate inherent prejudice in his trial" and denied habeas relief.

We note that the record does not fully support the district court's assertion that no jurors had friends of relatives who were officers; however, this discrepancy does not change the outcome of this case because only inherent prejudice has been alleged. Our independent review of the record supports the district court's other conclusions.

Jones's evidence shows that uniformed officers attended each day of Jones's trial. The number of officers in attendance varied, but the highest estimates were "between fifteen and twenty five," comprising between one-fifth and one-third of the spectators. According to one account, officers often arrived early to reserve the first two rows of seating, and some stood against the courtroom walls when no seating was available.

Jones's argument that the jury could only infer from the officers' presence that they demanded a guilty verdict is unpersuasive, not least because it contradicts his own assertions made to the state court, wherein he alleged the officers might have been present out of curiosity or in support of the family. Other courts have declined to find the mere presence of officers in

16

No. 15-70040

a courtroom sufficient to support inherent prejudice,[84] and the record before us does not suggest the police presence intimidated the jury or disrupted the fact-finding process in any way.[85]

## C

Even assuming that § 2254(e)(2) does not bar this court's consideration of the media-related evidence presented for the first time in Jones's federal habeas petition, his fair trial claim still fails.

There was extensive newspaper coverage of the aftermath of the shooting, the officer's eventual death and funeral, and the investigation and arrest of Jones. Jones also offers several articles reporting on voir dire and the commencement of trial. The majority of the articles offer positive support for the officer—calls for blood donations or commentary on the need for better procedures to ensure officer safety. The pre-trial articles that do mention Jones are written in a measured, factual manner, and note that the prosecution was attempting to avoid the kind of publicity that had resulted in a change of venue in another case. Jones cites to only one inflammatory remark, made shortly after the officer died, in a letter to the editor—a comment that "a tall tree and short rope" would be appropriate for Jones. Another article that Jones suggests calls for his death merely reports that two suspects had been

---

[84] See Smith v. Farley, 59 F.3d 659, 664 (7th Cir. 1995) ("[I]f you kill a policem[a]n and are put on trial for the crime, you must expect the courtroom audience to include policemen."); Howard v. State, 941 S.W.2d 102, 118 (Tex. Crim. App. 1996) (en banc) ("[T]his Court cannot hold that the mute and distant presence of twenty peace officers—comprising roughly one-fifth of the spectator gallery—is prejudicial, per se, without some other indication of prejudice."), on reh'g (Dec. 18, 1996) (en banc), overruled on other grounds by Easley v. State, 424 S.W.3d 535 (Tex. Crim. App. 2014), holding modified by Simpson v. State, 119 S.W.3d 262 (Tex. Crim. App. 2003).

[85] Cf. Sheppard v. Maxwell, 384 U.S. 333, 354 (1966) (noting that "bedlam reigned" in the courtroom, members of the media "hound[ed]" the trial participants, and a press table was set up inside the bar in the courtroom); Woods v. Dugger, 923 F.2d 1454, 1459 (11th Cir. 1991) (noting that the trial judge had to admonish the spectators to keep quiet).

17

No. 15-70040

previously charged with attempted capital murder, and, as the officer had died, it was expected that the charges would be upgraded to capital murder. Jones provided no evidence of any additional publicity for the nearly six months between the officer's death and the start of trial. Articles concerning the trial itself were likewise objective, reporting on a suppression hearing and the start of voir dire.

Jones does not allege the kind of harassing publicity, "carnival atmosphere,"[86] or "considerable disruption" the Supreme Court has recognized as unacceptable in contexts involving the press and the public.[87] Nor does he suggest that the trial judge "lost his ability to supervise [the trial] environment."[88] Rather, Jones argues that the pretrial publicity shows the community was "angry" and "organized behind convicting . . . Mr. Jones." However, the evidence, even if considered in the light most favorable to Jones, does not support this allegation.

Though it is clear from the press that the community at large was aware of and troubled by the shooting, Houston, one of the largest cities in the country, was not a small, close-knit community like that in *Woods* or *Hill*.[89] The lack of extensive publicity leading up to the trial further undermines the argument that the community was "angry" or "organized" with respect to the shooting of the officer at the time of trial. The trial court questioned each panel of veniremen about its exposure to the case, and most members of the venire remembered very little about the case other than the name of the officer who was killed.

---

[86] *Sheppard*, 384 U.S. at 358.

[87] *Id.* at 353-55; *Estes v. Texas*, 381 U.S. 532, 536 (1965).

[88] *Sheppard*, 384 U.S. at 355.

[89] *See Jones v. Stephens*, 2015 WL 6553855, at *5 (S.D. Tex. Oct. 28, 2015).

No. 15-70040

Finally, media reports suggest some of the officers present may have worn a black cloth or shroud over their badges with the motto "Nemo me impune lacessit," Latin for "no one assails me with impunity." Jones makes much of this possibility. Setting aside the dubious assumption that the jurors could read the words from the jury box *and* understood Latin, we decline to hold that mere adornment with a sign of mourning is sufficient to prejudice a defendant's right to a fair trial.[90]

Considering the totality of the circumstances at Jones's trial[91]—even including the media coverage leading up to the trial and the dress of the officers in attendance—the scene presented does not support a finding of inherent prejudice.[92] We are mindful of the statement in *Flynn* that, when reviewing a state court proceeding, "[a]ll a federal court may do . . . is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial."[93] Jones has not shown that the presence of uniformed officers observing a criminal trial in solidarity with a fallen officer is such a threat.

---

[90] *See, e.g.*, *In re Woods*, 114 P.3d 607, 616-17 (Wash. 2005) (en banc) (holding that black and orange ribbons without inscription did not express an opinion about the defendant's guilt or innocence and, thus, did not cause inherent prejudice); *Davis v. State*, 223 S.W.3d 466, 474-75 (Tex. App.—Amarillo 2006, pet. dism'd) (rejecting the petitioner's assertion that the presence of spectators wearing medallions with the deceased officer's picture created inherent prejudice). *But see Norris v. Risley*, 918 F.2d 828, 830-31 (9th Cir. 1990) (holding that spectator buttons reading "Women Against Rape" inherently prejudiced the defendant).

[91] *See Sheppard*, 384 U.S. at 352.

[92] *Cf. Mata v. Johnson*, 99 F.3d 1261, 1271 & n.34 (5th Cir. 1996) (noting "with some consternation" that the factual situation described by the petitioner, which was "virtually indistinguishable" from that in *Woods v. Dugger*, could "provide the basis of a cognizable constitutional claim" and remanding the case for an evidentiary hearing after determining the state's procedural dismissal did not bar federal review of the claim), *vacated in part on reh'g*, 105 F.3d 209 (5th Cir. 1997).

[93] *Holbrook v. Flynn*, 475 U.S. 560, 572 (1986).

19

No. 15-70040

## V

Jones also appeals the district court's denial of additional investigative funding and discovery, arguing that summary judgment was premature absent further record development. We disagree. After our remand of the case for consideration of the merits, Jones sought funds for an investigator to conduct witness interviews and subpoenas for archived media records of the trial. These requests were denied

A federal habeas "judge may, for good cause, authorize a party to conduct discovery."[94] A petitioner seeking funding for investigative services must show that the requested services are "reasonably necessary."[95] The Supreme Court has recently explained that this phrase "calls for . . . a determination by the district court, in the exercise of its discretion, as to whether a reasonable attorney would regard the services as sufficiently important."[96] The Court continued, "[p]roper application of the 'reasonably necessary' standard thus requires courts to consider the potential merit of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way."[97] However, "the 'reasonably necessary' test requires an assessment of the likely utility of the services

---

[94] Rule 6(a) of Rules Governing § 2254 Cases.

[95] 18 U.S.C. § 3599(f) (providing, in part, that "[u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g).").

[96] *Ayestas v. Davis*, __ S.Ct. __, __ (slip op. 15-16) (March 21, 2018); *see also id.* at __ (slip op. 17) ("A natural consideration informing the exercise of that discretion is the likelihood that the contemplated services will help the applicant win relief.").

[97] *Id.* at __ (slip op. 17-18).

20

No. 15-70040

requested, and § 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone."[98]

The district court did not abuse its discretion in denying investigative services because Jones did not show those services were "reasonably necessary" to develop his fair trial claim. Jones claims that officer presence during his trial and pre-trial publicity inherently prejudiced his trial. In his request for investigative services, he notes that the record contains affidavits of six witnesses as well as multiple media accounts of the number of officers present in the courtroom. This evidence documents the officers' positions and conduct during trial as well as the number present. Jones requested investigative services to interview some 15-20 additional witnesses about the "courtroom environment," citing the "somewhat differing accounts" provided by the current record. However, Jones offers the court no reason the additional interviews (now 25 years later) would be any more precise or offer less variation than the accounts he already has. Because we determine he is not entitled to relief even under the most favorable view of the facts, we see no purpose served by additional discovery on these issues.[99]

Jones also seeks to subpoena several media outlets to obtain any archived press coverage, photographs, or video footage from the trial, evidence which he claims will show the number of officers, their ratio to civilians, and their location relative to the jury. We note that, upon objection by both parties, the state trial court specifically disallowed a camera during closing arguments. Based on the exchange between counsel and the court at that time, there is no reason to believe cameras were allowed during any other part of the proceedings prior to sentencing.[100]  Further, the articles attached to Jones's

---

[98] *Id.* at __ (slip op. 18).
[99] *See Smith v. Dretke*, 422 F.3d 269, 288-89 (5th Cir. 2005).
[100] *Id.*

21

No. 15-70040

petition indicate that at least some are from periodical archives. Jones has offered no explanation as to how this information is incomplete, or why there is a reasonable expectation that additional requests would yield differing information.

The evidence provided in the habeas petition itself provides the court with sufficient information as to the number, location, and ratio of officers in the courtroom—that is, the scene presented to the jury. The evidence also provides sufficient evidence of the type and quantity of publicity. Jones fails to show how the discovery he seeks would do more than supplement that which he has already provided and offers no explanation for why he failed to seek discovery on these issues until now. We therefore conclude that the district court did not abuse its discretion in denying discovery, nor did it err in resting its conclusion on the evidence presented in the federal habeas petition.

*        *        *

For the foregoing reasons, we AFFIRM the judgment of the district court denying habeas relief on Jones's fair trial claim.